Smith, J.
We are of the opinion that if the decision in the case of Wright v. The Union Telegraph Co., 4 O. C. C. Rep. 375, was *650 sound, and if the same rule is to be applied to appeals from the probate court'to. the court of common pleas, as to appeals from the common pleas to the circuit court, that the motion, to dismiss the appeal should have been sustained by the common pleas court, instead of being overruled, as was done.
We think, however, that the same rule is not to be applied to both cases. The statutory provisions as to the two are very dissimilar. Secs. 5227 and post. Rev. Stat., govern appeals to the circuit court, and in such case, the intention of a party to appeal his cause must be entered upon the journal of the court of eommon pleas at the term at which the decision to be appealed from was entered, and this in all eases, whether an appeal bond must be given or not. While sec. 6407, which allows an appeal “from (any) order or decision” of the probate court “ in the administration of insolvent estates, by assignees, trustees and commissioners”, and in other cases named, and sec. 6408, which points out how the appeal shall be perfected, do not in terms require that notice of the intention to appeal shall be entered upon the journal or record of the probate court. It is simply provided “ that the person desiring to take an appeal as provided in the preceding section, shall within, twenty days after the making of the order, decision or decree from which he desires to appeal, give a written undertaking”, as is provided in the section. The only provision as to any •notice of the intention to appeal is in that clause which dispenses with the giving of a bond when the person appealing is a party to the suit in a fiduciary capacity, in which he has given bond within the state for the faithful discharge of his duties, and he appeals in the interest of his trust, and it only requires him to give written notice to the court of his intention to appeal within the time limited for giving bond in other cases, viz., twenty days. But it is not stated in the law that this written notice must be spread upon the journal of the court.
' It is true that sec. 6411 says, that “the provisions of law governing civil proceédings in the court of common pleas shall *651 so far as applicable govern like proceedings in the probate court, when there is no provision on the subject in this title.” But this can not be held to apply to the mode in which appeals may be taken, for there is full provision upon that subject in the title. We are aware, too, that so far as our knowledge extends, it has been the practice to give notice of the intention to appeal, by having the same entered on the journal of the probate court, and in the case of an appeal by a person required to give bond it is probably good practice ; but we are not able to see any provision of. the statute which requires it to be done, and would not feel justified in holding that if the appellant has complied with the law in other respects, that a failure to have notice of his intention entered on the journal is necessary to enable him to appeal. And if this is not necessary, or required by the law, the fact that in the notice so entered, a person attempts to appeal only a part of the ease, would not so operate as to confine the appeal to such part.
' Whether, in a case like this, where a guardian who has given bond in this state, (which however does not appear in the general entry of the notice of intention to appeal), and who attempts to do so in the interest of his trust, complies with the provisions of the statute cited above that he must “give written notice to the court of his intention to appeal”, by having a simple entry on the journal of the court, was not referred to by counsel; but if not necessary to go upon the journal, and a written notice in another form is required, we suppose that the facts necessary to sustain the appeal may be shown aliunde on a motion to dismiss the appeal, and for all that .appears, such proof may have been offered in the common pleas on the motion to dismiss the appeal. We can not say, therefore, that the court erred in refusing to grant such motion.
■ Second — Was there error in the final judgment entered by the court of common pleas ? It appears from the record that in the administration by the probate .court, of the assignment made by W. H. Meyer to Mr. Douglass, the court was called; upon by motions or petitions, filed, by the respective parties,- *652 and by the written motion of the assignee, to adjudicate as to the validity and priority of the chattel mortgages, executed by the assignee upon the stock of goods afterwards assigned by him to Mr. Douglass for the benefit of his creditors, and which goods had been sold by him, and the proceeds of which were then held for distribution under the order of the court. One of these mortgages was made by Meyer to one J. H. Pruess on the 7 th of March, 1888, to secure the payment of a note made by him to Pruess, dated March 6, 1888, and calling for $1500, onedayafter date. Thismortgageandthenote secured by it were duly assigned by Pruess to Herman Keck, Jr. And on the next day Meyer executed to himself, as guardian of the four Siebern minors, a mortgage on the same property to secure the payment of $11,000, which he as such guardian had received for them, and had used in his business; and after this, on the same day, he made a general assignment of the same property to Mr. Douglass for the benefit of creditors. Afterwards Meyer resigned his trust as guardian, and Mr. Durrell was appointed in his stead.
In the probate court an order was entered, finding that the mortgage held by Keck was a valid claim and the first lien on the assigned property, and that the mortgage held by Durrell as guardian was a valid claim and the next lien, and ordered the assignee, after paying $1.25 costs, to pay to Keck $1789.50 in full of his claim, and the balance in his hands, amounting to $2880,27, on the Siebern mortgage. From so much of this judgment as found the claim of Keck to be valid and to be the first lien Durrell, by entry on the journal, declared his intention to appeal to the court of common pleas ; and thereafter the case was heard in^that court on the same papers which came from the probate court, and a finding of facts and law Whs made, but no bill of exceptions containing the evidence Was allowed by the court.
' Though the motion to dismiss the appeal on the ground that it was an attempt to appeal from a part only of the case, Was' overruled by the court, it is manifest that it was consid *653 ered that the only question before it was as to the validity of the Keck mortgage, for no finding whatever was made as to tbe Durrell mortgage. The court simply held the Keck mortgage to be invalid, as being in its nature fraudulent, and sent the ease back to the probate court with the direction that the amount of $1789,50, which the probate court had erroneously ordered to be paid to Keck, should by said court be distributed according to law, but without finding to whom; but it was supposed on the Durrell mortgage, as to which the common pleas had made no finding, but probably went upon the idea that the finding of the probate court as to that was not appealed from.
The grounds upon which such a judgment was entered as to the mortgage of Keck, as appears from the finding of facts, are these : “It is found that Meyer & Pruess, for several years prior to March 6, 1888, had been partners in the shoe business in this city. Meyer during this time was acting as the legal guardian of the Siebern children, and had received money as such belonging to their estates, and without the knowledge of his partner Pruess, had used it in the firm business, putting it into the business at various times and in different sums, malting no entry thereof upon the books of the firm. Shortly before March 6, 1888, Meyer informed Pruess that he had so used the money in his hands as guardian, and Pruess being greatly dissatisfied,with his action, a dissolution of the partnership was agreed upon by which Pruess was to retire from the business, Meyer to keep all of the assets and pay all the debts of the partnership, and was to execute his note to Prues for $1500.00, secured by a mortgage upon the stock, all 'of which was done. The court finds that when this was done, Meyer before that time had used $11,000.00 of his wards’ money in the business. At this time the assets of the firm amounted to about $10,000.00, and the debts of the firm, saying nothing of the $11,000.00 so used by Meyer, were $3,300.00. 'íhe court further found that a great part of the assets of the partnership, (without finding any particular sum), was the pro *654 duct of the use of such trust funds by Meyer, and that knowledge of the use of the same was to be imputed to Pruess, and that counting the $11,000.00 as a debt of the partnership, it was insolvent at the dissolution of the firm, and at the time of the execution of the mortgage to Pruess, which was therefore void, as to the Sieberns.
It is urged by the counsel for the plaintiff in error that such judgment of the court of common pleas is erroneous, and should be reversed for several reasons. 1st. — That the proper and necessary parties were not before the court, questions having been decided, the decision of which injuriously affected the interests of persons not before the court, and in this way, that it undertook to adjudicate that a mortgage given by Meyer to Pruess, the mortgagee, who had transferred it and the note secured thereby to Keck, and who was presumably liable to the latter as an indorser of the note, was not a party to the proceeding, and had no opportunity to defend the validity of the mortgage, and by the judgment of the court the mortgage, which secured him against such liability, is declared void.
There is much force in this claim, but we doubt whether, of itself, it is a groundfor the reversal of the judgment. In the first place, to justify the reversal, the error complained of must be prejudicial to the plaintiff in error, and it is'difficult to see' how it is shown tobe so here. He was the assignee of the Pruess mortgage, and fully represented it, and could make any defense to a claim that it was invalid, that Pruess himself might have made, and there is nothing whatever in the record to show that the latter had any interest whatever in the claim or mortgage, or that he is in any way liable to Keck by reason of his transfer thereof or of the note which it was given to secure. The note may have been assigned without any recourse upon him, or Keck may have entirely failed to take the legal steps' to hold him as an indorser. Under no circumstances that we can see would Pruess have any right in another suit against Douglass, the assignee, if his transfer of the mortgage' to Keck was absolute, to set up the same as a lien upon this. *655 fund, which perhaps is the test whether he was a necessary, though he might properly have been made a party to this case. Nor were the other creditors of the firm of Meyer & Pruess, or the general creditors of Meyer alone, necessary parties to the proceeding. We suppose that "they were really represented by Mr. Douglass, the assignee. Unquestionably they might have intervened and denied the validity of either or both of the mortgages, and sought to have the fund applied to the payment of their respective claims, or to stand on the same footing at least with Keck and the Sieberns, but they did not do so, and we do not see how this deprived the court of the power to adjudicate the questions before it, or how the plaintiff in error can complain of its having done so.
Objection is further made that no issue was made in the pleadings as to the validity of the mortgage in question. This is true, as no answer was filed by any one alleging that for any reason it was invalid. We think this should have been done, and the proceedings were certainly conducted in a loose and irregular manner. But the records do not show that any objection whatever was made by the plaintiff in error to a full hearing of the validity of his mortgage. It is apparent from the finding of facts made by the court of common pleas, that evidence was offered by the parties on this question, presumably without any objection or exception. We do not think that under these circumstances it is fatal to this judgment that formal pleadings were not filed, especially so when the motion of the assignee, that the court should ascertain and adjudge the priorities of the claims against the fund, is taken into account. This is conceded in effect to have been a general denial of the rights of the mortgagees, and it is a case rather of defective pleading, than of one where the court disposes of a case as if an issue were raised, when it was not done.
Whether the judgment of the court of common pleas on the facts as found was warranted by the law, we think is questionable ; but under the circumstances of the case, we have deemed *656 it best to express no opinion upon this point, for the reason that we think the judgment was erroneous in this: If the appeal was good, and we have expressed the opinion that it was, it operated to bring up the whole case, and all the questions as to distribution of the fund in the hands of the assignee— while the court seems to have proceeded upon the idea that the only question for decision was as to the validity of the Keck mortgage, and that the decision of the probate court as to the validity of the Hurrell mortgage stood unaffected by the appeal, and therefore the court simply adjudicated as to the validity of the Keck mortgage, and ordered that the sum before awarded to it by the probate court should now, under the order of that court, be distributed according to law, without in any manner directing to whom such distribution should be made. This was not a decision of the questions before the court, and the remanding of an appeal case to the court from which the appeal was made, for a decision of a question which had been appealed, is not warranted by the law.
Wm. H. Pope, for plaintiff in error.

Oliver B. Jones, contra.

Believing that it will be in furtherance of justice, that for this reason the whole judgment of the court of common pleas should be reversed and a new trial awarded, that it may be all heard on proper pleadings, and with the proper and necessary parties before the court, if they are not here how, such will be the judgment of the court.